UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :

KEVION HILL, an infant by his mother  :
and natural guardian MARGIE HILL, et  :
al.,  :
                    Plaintiffs,  :
                                    :

              -v-                 :      06 Civ. 8213 (DLC)
                                    :

GEORGE NIEVES, individually, as a    :      OPINION & ORDER
counselor with the New York State    :
Office of Children and Family Services  :
at the Pyramid Reception Center, et   :
al.,  :
                    Defendants.  :
                                    :
----------------------------------------X

Appearances:

For Plaintiffs:
Bruce A. Young
181 Hudson Street, #1A
New York, New York 10012

For Defendant "Jane" Armstong:
Kelly M. Monroe
Thuillez, Ford, Gold, Butler & Young LLP
20 Corporate Woods Boulevard
Albany, New York 12211

For New York State Defendants:
George Anthony Alvarez
Assistant Attorney General
New York State Office of the Attorney General
120 Broadway
New York, New York 10271

For New York City Defendants:
Kimberly Conway
Assistant Corporation Counsel, City of New York
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

Infant plaintiff Kevion Hill ("Hill") and his mother and natural guardian Margie Hill bring suit against the City of New York as well as ten city and state employees, alleging that the defendants violated Hill's federal constitutional and state-law rights in connection with an injury he suffered while in the custody of the New York City Department of Juvenile Justice. Defendants have moved to dismiss or for summary judgment in three separate motions, and plaintiffs have not opposed the motion. For the following reasons, the motions are granted.

BACKGROUND

The facts that follow are undisputed -- principally because plaintiff failed to make any submission in opposition to defendants' motion for summary judgment. By order of the New York City Family Court, Hill was placed with the Office of Children and Family Services on June 29, 2005 and was sent to the Spofford Bridges Detention Center ("Spofford"), a detention facility operated by the New York City Department of Juvenile Justice. On July 8, while at Spofford, Hill was playing basketball with three other juveniles. One of them hit Hill twice with his fist on the right side of his jaw, and then on the chin. According to Hill, he was "very dizzy" but not unconscious after he was struck. He was able to talk. He was bleeding inside his mouth.

Spofford staff immediately took Hill to see the nurse, who examined Hill's mouth and "said that it was a wisdom tooth or something growing in," according to Hill. Hill recalls informing the nurse that he felt like his jaw was broken. Hill was also examined by Dr. Philomena Ude, a facility physician. Dr. Ude found that Hill suffered from pain on his right lower jaw, that there was no swelling, and there was no limitation of jaw movement. She concluded that there was no indication of a fracture at that time. Ice was administered, and Hill was given Motrin to treat his pain.

Following his visit with the nurse and physician, Hill was escorted to meet with Ms. Johnson, one of the administrators on duty at the time. Hill filled out a written report about the incident on the basketball court, and told Ms. Johnson and other administrators on duty that he "felt that something was wrong with my jaw, that my jaw may be broke." Hill was moved to the segregated housing unit at his own request following the incident. He began to notice swelling in his jaw two to three hours after he was struck.

In the days following the incident, Hill visited Spofford's medical unit "several times," and was given Motrin and antibiotics to treat his jaw. At the direction of Dr. Ude, Hill was given broth and crackers to eat. No x-ray was performed while Hill was at Spofford. On July 10, Hill reported that his

jaw was swollen, that he could not sleep on his jaw, and that he needed an x-ray. Physician's assistant Jean-Baptiste Richards evaluated Hill that day, and reported that he suffered from swelling and tenderness of the lower jaw. Richards concluded that Hill's jaw had been fractured; he therefore consulted the facility physician on call at the time. The facility physician determined that Hill's swelling was due to an infection rather than a fracture. The physician deferred an x-ray examination and prescribed hot-water soaks, Motrin, and an antibiotic for Hill. Hill spoke with his mother the same day, and told her that he thought his jaw was broken.

On July 11, Hill was again evaluated by the facility physician, who did not observe any evidence of jaw fracture or dislocation. Rather, the physician found minimal swelling and abrasions over Hill's wisdom tooth. The physician added a daily saline rinse to Hill's regimen, and ordered that he resume a regular diet because he had been observed eating regular food without any discomfort.

On July 13, five days after Hill was hit, he was transferred to the Pyramid Detention Center ("Pyramid"), where he was to begin a fourteen-day program in advance of entering an Office of Children and Family Services facility. Pursuant to Pyramid's general practices, Hill was interviewed by a nurse,

defendant Patricia Armstrong,[1] during his first night there.
Hill told Armstrong about the incident at Spofford, and
Armstrong felt his jaw and examined his mouth.  Hill did not
evidence any difficulty in speaking.  He did not tell Armstrong
that he was having difficulty sleeping on his jaw, or that he
felt he needed an x-ray.  Armstrong was not informed by Hill or
anyone else that Hill had requested an x-ray in writing while he
was at Spofford, nor was she aware that anyone at Spofford had
suggested Hill might need an x-ray.  She gave Hill the same
medication he had been receiving at Spofford.

Shortly after Armstrong completed her examination, facility
physician Dr. Horn arrived at Pyramid and examined Hill.  Dr.
Horn's assessment of Hill was that there was no sign of
"crepitus" or fracture, and that Hill could wait until Monday,
July 18 to go for an x-ray because a substantial amount of time
had passed since the incident occurred, and because if Hill
waited until Monday, he could be seen by a dental specialist for
any necessary further treatment.  Dr. Horn told Hill that he
would soon be sent for an x-ray.  In addition to Armstrong and
Dr. Horn, several other Pyramid staff members examined Hill.
According to Hill, he was treated "good" by Pyramid staff, and

---

[1]     Armstrong is named in the caption as "Jane" Armstrong.  She
will be referred to in this Opinion by her actual name.

was given a "special diet" of soup, milk shakes, yogurt, applesauce, and Ensure during his stay at the facility.

Following their interviews with the nurse, youths admitted to Pyramid are generally assigned to a particular group of seven or eight arriving youths, called "cohorts" and each designated with a particular color. Each cohort is in turn assigned to a Pyramid staff member who serves as the cohort's "Youth Counselor." The Youth Counselor usually meets with the cohort on the next business day after the youths' arrival at Pyramid, at which time the Counselor interviews the cohort members to elicit certain information about their background, complete intake and family contact forms, and answer any questions or concerns the youths might have. Rather than being immediately assigned to a cohort, however, Hill was assigned to a temporary unit and was assigned to the Red Cohort two days later, on July 15. Because July 15 was a Friday, Hill was not scheduled to meet with his cohort leader, Nieves George,[2] until Monday, July 18. On that day, however, Hill was transported out of Pyramid to an outside hospital. Hill and Nieves did not meet on or before July 18.

---

[2]    Nieves George is incorrectly named as George Nieves in the caption of this action. She will be referred to by her correct name in this Opinion.

On July 18, five days after Hill's arrival at Pyramid, Armstrong contacted defendant Gregory Jones,[3] a Pyramid youth counselor and the administrator on duty that day, to inform him of Hill's condition and to arrange Hill's transportation to an outside hospital. Jones interviewed Hill about his condition, and Hill informed Jones that he had injured his jaw during an incident at Spofford on July 8. Jones called the central state office to advise them that Hill would be transported to an outside hospital, and then called Hill's mother to advise her of her son's condition. Hill testified that Jones was a "very nice guy" and "was very helpful to me."

Hill was taken to St. Barnabas Hospital, where he was sent for x-rays and then to the dental department. The x-rays revealed a fractured right mandible. He was told to return the following day and when he did, his jaw was wired shut. He then returned to Pyramid, where he resumed his diet of soft foods and was weighed every four to five days to ensure that his weight remained consistent. Hill did not file any medical request slips or grievances during his time at Pyramid. His jaw remained wired shut for a month and a half.

Hill and his mother, individually and as Hill's mother and natural guardian, filed this action on October 6, 2006, alleging

---

[3]    Gregory Jones is named as "John" Jones in the caption of this action. He will be referred to by his correct name in this Opinion.

improper supervision, failure to train and supervise, failure to provide medical treatment, delay in medical treatment, deliberate indifference to a serious medical need, negligence in discharging a special duty to protect from harm, violation of Hill's First Amendment rights to contact his mother, and general negligence. The complaint named the City of New York and ten individuals as defendants. Six of the individual defendants were never served with a summons and complaint. The remaining four individual defendants, as well as the City of New York, have moved for summary judgment in three separate motions. The City of New York has moved to dismiss the complaint as to the defendants who have not been served with a summons and complaint. Plaintiffs' opposition to defendants' motions was due March 7, 2008; no opposition was received.

It bears mention that this action's procedural history is marked by plaintiffs' repeated failure to prosecute their case diligently. By Order dated February 16, 2007, fact discovery was to be completed by June 29; expert discovery was to be completed by October 5, and any motion for summary judgment was to be filed by October 26. Through a letter from plaintiffs' counsel dated October 25, the Court was alerted for the first time that no depositions had been taken in this case. Plaintiffs sought an extension of discovery. Defendants opposed the extension, and submitted that they had offered numerous

possible dates for the defendants' depositions, but never heard back from plaintiffs' counsel during the time allotted for fact discovery. On July 13, which was after the close of fact discovery, plaintiffs sought new dates for depositions. Defense counsel advised plaintiffs' counsel at the time that he would have to seek permission from the Court for an extension. Plaintiffs' first request for such an extension came in their October 25 letter.

At a conference held on October 29, a new schedule was set to allow for limited discovery. Fact discovery was to end November 16; expert discovery was to end January 18; and any motion for summary judgment was to be filed February 15, 2008. By letter dated November 14, 2007, defendants informed the Court that a discovery dispute had arisen. Specifically, defendants objected to plaintiffs' request to depose Tahia Johnson, Commissioner Neil Hernandez, and the "City of New York," and further objected to plaintiffs' request to inspect and photograph Spofford. Defendants' letter recited numerous attempts to contact plaintiffs' counsel regarding this objection, to wit: letters dated November 5 and November 7, and a telephone message left on November 13. A telephonic conference was scheduled for November 29 at 5:15 p.m. Defendants' counsel left several telephonic messages for plaintiffs' counsel, all of which went unreturned. On November

28, the Court left two telephonic messages with plaintiffs'
counsel, both of which went unreturned.  Accordingly, by Order
dated November 28, defendants' request to quash certain of
plaintiffs' discovery requests was granted.

By letter dated January 23, 2008 -- more than two months
after fact discovery closed -- plaintiffs' counsel wrote to
Magistrate Judge James C. Francis IV, to whom this action was
referred for settlement purposes only, and requested an order
requiring the New York State Office of Children and Family
Services to turn over certain documents related to Hill's time
in the Office's custody and care.  Magistrate Judge Francis
forwarded the letter to this Court, and plaintiffs' request was
rejected as untimely by memo endorsement dated February 11.[4]

DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The
moving party bears the burden of demonstrating the absence of a
material factual question, and in making this determination, the
court must view all facts in the light most favorable to the
non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

---

[4]     The endorsement advised plaintiffs that they could renew
their application if the case survived defendants' summary
judgment motion.

(1986); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d

Cir. 2006).  When the moving party has asserted facts showing

that the non-movant's claims cannot be sustained, the opposing

party must "set forth specific facts showing that there is a

genuine issue for trial," and cannot rest on the "mere

allegations or denials" contained in the pleadings.  Fed. R.

Civ. P. 56(e); accord Sista, 445 F.3d at 169.  That is, the non-

moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita

Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).  Only disputes over material facts -- facts that might

affect the outcome of the suit under the governing law -- will

properly preclude the entry of summary judgment.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

     When a non-moving party fails to oppose a motion for

summary judgment, a court

          may not grant the motion without first examining the
          moving party's submission to determine if it has met
          its burden of demonstrating that no material issue of
          fact remains for trial.  If the evidence submitted in
          support of the summary judgment motion does not meet
          the movant's burden of production, then summary
          judgment must be denied even if no opposing
          evidentiary matter is presented.

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir.

2006) (citation omitted).  "Even unopposed motions for summary

judgment must fail where the undisputed facts fail to show that

the moving party is entitled to judgment as a matter of law."
Id. (citation omitted).

I.   Individual Defendants Not Served with Summons and Complaint

Six defendants named in this action with fictitious names
have not been identified or served with a summons and complaint.
Plaintiffs are represented by counsel, and discovery in this
action has been completed.  Nonetheless, they have failed to
identify or to serve with process any of the unnamed defendants
allegedly responsible for the deprivation of Hill's rights.
Accordingly, because a "tort victim who cannot identify the
tortfeasor cannot bring suit," Valentin v. Dinkins, 121 F.3d 72,
75 (2d Cir. 1996), the action is dismissed as to unnamed
defendants "John" Rivera, "John" Tong, "John Doe," "Jane Roe,"
"Jane" Johnson, and "John" Walker.[5]

II.  Defendant "Jane" Armstrong

The Complaint contains only two allegations against
Armstrong: that Hill told her that his jaw was broken by another
resident at Spofford, and that she administered only pain
medication and no diagnosis to him.  Construing these
allegations broadly, they would provide the basis for only two
of Hill's eight claims: delay in medical treatment and violation

---

[5]    The City of New York also moves to dismiss the action
against Dennis Anyaca, who is not named in the caption but
against whom various allegations are made in the complaint.
Because Anyaca is not a party to this action, it need not be
dismissed against him.

of his Eighth Amendment rights.[6] Armstrong moves for summary judgment, contending that there was no delay in Hill's medical treatment and that no Eighth Amendment claim can lie because Hill's injury was not a serious medical condition. Armstrong's motion is granted.

Hill's two claims for delay in medical treatment and violation of his Eighth Amendment rights are in fact both claims for deliberate indifference to a serious medical need,[7] and accordingly will be treated as such. Further, they will be construed as Fourteenth Amendment claims, because Eighth Amendment claims are only available to plaintiffs who have been convicted of a crime. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). The rubric for evaluating deliberate indifference

_____

[6] Hill's claim for improper supervision concerns the assault to which he was subjected, which occurred before he arrived at Pyramid and met Armstrong. Having nothing to do with what happened at Spofford, she cannot be liable for improper supervision. Hill's claims for failure to train and supervise, failure to provide medical treatment, negligence in light of a special duty, and violation of his First Amendment rights are all brought against the City of New York and its employees. Armstrong was employed by the State of New York and, accordingly, is not named in any of these claims. The sole remaining claim for negligence is brought indiscriminately against all defendants. For reasons discussed below, this Court will not exercise pendent jurisdiction over Hill's state claims because his federal claims all fail.

[7] Under the heading of "Delay in Medical Treatment," Hill's complaint claims, inter alia, that defendants were "deliberately indifferent" to his "serious medical needs." The complaint uses the same language to describe his claim headed "Eighth Amendment."

claims is the same under the Eighth and Fourteenth Amendments.

See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).  As the

Second Circuit has observed,

> [t]here is no settled, precise metric to guide a court
> in its estimation of the seriousness of a prisoner's
> medical condition.  In many cases, however, we have
> set forth factors that should guide the analysis.
> Thus, in Chance v. Armstrong[,143 F.3d 698, 702 (2d
> Cir. 1998)], we referred to a non-exhaustive list of
> such factors, including: (1) whether a reasonable
> doctor or patient would perceive the medical need in
> question as important and worthy of comment or
> treatment, (2) whether the medical condition
> significantly affects daily activities, and (3) the
> existence of chronic and substantial pain.

Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citation

omitted).  "The standard for Eighth Amendment violations

contemplates a condition of urgency that may result in

degeneration or extreme pain."  Chance, 143 F.3d at 702

(citation omitted).  "A cognizable claim regarding inadequate

dental care, like one involving medical care, can be based on

various factors, such as the pain suffered by the plaintiff, the

deterioration of the teeth due to a lack of treatment, or the

inability to engage in normal activities."  Id. at 703 (citation

omitted).  Considering all these factors, there is a triable

issue of fact as to whether Hill's condition was serious.  The

undisputed evidence shows that Hill had no difficulty speaking,

but that he periodically complained that he was unable to sleep

because of his jaw and was prescribed a diet of soft foods.

Most important, his jaw was wired shut for a month and a half, quite obviously affecting daily activities in a significant way. Thus summary judgment is precluded on this issue.

Under the second prong of the inquiry, the court must determine whether the defendant was "deliberately indifferent" to the plaintiff's medical needs. Deliberate indifference is a "state of mind that is the equivalent of criminal recklessness." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). The allegations of deliberate indifference must therefore rise above a mere showing of medical malpractice. Chance, 143 F.3d at 703. A showing of medical malpractice is therefore insufficient to support a deliberate indifference claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Id. (citation omitted).

The undisputed evidence shows that Armstrong acted in a timely and professional fashion in securing medical care for Hill. Hill saw Armstrong on his first day at Pyramid. At that time, Hill did not have any difficulty speaking, did not complain that his jaw was hurting, did not indicate that he was having trouble sleeping, did not say that he believed he needed an x-ray, and did not express any opinion that his jaw was broken. Armstrong examined Hill's mouth, prescribed him pain medication, and immediately called Dr. Horn to notify him of

Hill's condition.  According to the expert report of Dr. Robert H. Hill, which Armstrong submitted in connection with her motion for summary judgment, Armstrong's treatment was appropriate in light of the plaintiff's complaints and symptoms, and the fact that, despite his injury being over a week old, he was able to talk and eat.  There is thus no issue of triable fact as to whether the medical treatment Armstrong provided was substandard or dilatory, much less criminally reckless.  Summary judgment is thus granted in her favor.

III. Defendants Nieves George and "John" Jones

The complaint's only mention of defendant George is in the section identifying the defendants, where she is identified as an employee of the New York State Office of Children and Family Services.  The complaint contains no specific allegations concerning defendant Jones.  As discussed above with regard to defendant Armstrong, the only claims that might plausibly lie against New York State employees working at Pyramid, where Hill arrived already injured, were those for violation of Hill's Eighth Amendment rights stemming from their treatment of his medical condition.  George and Jones have moved for summary judgment on these claims, alleging that they had no personal involvement in Hill's medical treatment.  Their motion for summary judgment is granted.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted). Moreover, on claims of deliberate indifference, a plaintiff must show such indifference on the part of a "particular defendant." <u>Brock</u>, 315 F.3d at 164. Plaintiffs have entirely failed to shoulder their burden in this respect. Indeed, the undisputed facts show that Hill did not meet George until after his jaw had been treated. At his deposition, Hill testified that he could not remember anyone named "George Nieves" or "Nieves George." Her lack of "personal involvement" in the treatment <u>vel non</u> of Hill's injury is manifest. As to Jones, the undisputed facts show that he diligently undertook his temporary duties as the administrator on duty by securing transportation for Hill from Pyramid to the hospital and by contacting Hill's mother about her son's condition. There is no allegation that his behavior approached the threshold of a constitutional violation. Accordingly, defendants George and Jones' motion for summary judgment is granted.

IV. Defendants Neil Hernandez and The City of New York

Hill brings all eight claims against the City of New York and an undefined group of "City Defendants."[8]  As discussed above, the action is dismissed as to all but one of the individual defendants employed by the City of New York –– Neil Hernandez –– because of plaintiffs' failure to serve them. Thus, what remains to be considered in this Opinion are the federal constitutional and state-law claims against Hernandez and the City of New York.

As discussed above, in order to hold a defendant liable for violations of the plaintiff's constitutional rights, the plaintiff must adduce evidence of a particular defendant's "personal involvement . . . in alleged constitutional deprivations."  Wright, 21 F.3d at 501.  The complaint does not contain a single allegation about Hernandez's participation in the incidents giving rise to this action.  Accordingly, summary judgment is granted in Hernandez's favor on all federal constitutional claims.

As to the City of New York, plaintiffs ostensibly seek to hold the municipality liable under the Supreme Court's decision in Monell v. Dep't of Social Servs. of the City of N.Y., 436 U.S. 658 (1978).  In Monell, the Supreme Court ruled for the

---

[8]     The complaint either names this group of "City Defendants" explicitly, or brings a claim against "all defendants."

first time that municipalities were liable to be sued as

"persons" within the meaning of that statute, when the alleged

unlawful action was implemented or executed pursuant to a

governmental policy or custom. Id. at 691, 694. In the instant

case, the policy or custom at issue is not an affirmative one,

but rather an alleged failure on the City's part to properly

supervise Hill while at Spofford, to train and supervise the

social workers and supervisors at Spofford, to provide medical

treatment in a timely fashion, and to permit youths detained at

Spofford to contact their parents. Such failures may fall

within the ambit of a Monell claim. As the Second Circuit has

recognized, "Monell's policy or custom requirement is satisfied

where a local government is faced with a pattern of misconduct

and does nothing, compelling the conclusion that the local

government has acquiesced in or tacitly authorized its

subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d

183, 192 (2d Cir. 2007). Satisfying this burden is difficult,

however, as "a city's failure to train its subordinates

satisfies the policy or custom requirement only where the need

to act is so obvious, and the inadequacy of current practices so

likely to result in a deprivation of federal rights, that the

municipality or official can be found deliberately indifferent

to the need." Id. Further, at the summary judgment stage,

plaintiffs must "identify a specific deficiency in the city's

training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)

Plaintiffs have raised no triable issue of fact as to whether the City of New York has adopted policies or customs actually causing any alleged constitutional deprivation. Their sole submission in this action, their complaint, alleges in only the most conclusory fashion that their constitutional rights were violated in myriad ways. Putting the substantive weakness of their constitutional claims aside, however, plaintiffs have raised absolutely no triable issue of fact as to the existence of policies or customs at Spofford or within the City's juvenile services department that might eventuate in constitutional deprivations. Certainly, they have not pointed to any "specific deficiency" in the City's practices that might provide the basis for Monell liability in this case. Accordingly, summary judgment is granted in the City of New York's favor on plaintiffs' constitutional claims against the City.

V.    State Law Claims

Having dismissed or granted summary judgment on all of plaintiffs' federal claims, this Court declines to exercise supplemental jurisdiction to hear plaintiffs' pendent state-law

claims.  See 28 U.S.C. § 1367(c)(3).  Plaintiffs' state-law
claims are therefore dismissed.

CONCLUSION

The February 15, 2008 motions for summary judgment filed by
the City of New York, Neil Hernandez, Nieves George, Gregory
Jones, and Patricia Armstrong are granted on all federal claims.
The state-law claims against these defendants are dismissed
without prejudice to their refiling in state court.  The claims
against the remaining defendants are dismissed.  The Clerk of
Court shall close the case.

SO ORDERED.

Dated:    New York, New York
          March 31, 2008

                                   _____
                                        DENISE COTE
                                   United States District Judge

21